**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

SANDRA LEA BROWN,

          Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

No. C16-0179-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

---

## I.     INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, United States Magistrate Judge. *See* Doc. No. 16. Judge Mahoney recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Sandra Brown's applications for Social Security disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. (Act). Brown filed timely objections (Doc. No. 17) to the R&R. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.     APPLICABLE STANDARDS

### A.     *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.,* 879 F.2d 441, 444 (8th Cir. 1989). The court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true "even if [the court] might have weighed the evidence

differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

### B.    *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.     THE R&R

Brown alleged disability due to fibromyalgia, rheumatoid arthritis, osteoarthritis, cataracts, asthma, sleep apnea, diabetes, neuropathy and surgical thyroid removal.  AR 31, 42.  In support of her claim, Brown submitted residual functional capacity (RFC) opinions drafted by her treating physician, Kirk W. Kilburg, M.D., a consultative physician, Stanley J. Mathew, M.D., and examining psychologists Luke Hansen, Ph.D., and Harlan J. Stientjes, Ph.D.  At issue are the ALJ's evaluation of those opinions,[1] whether ALJ erred in discounting Brown's subjective allegations, and whether the ALJ's RFC was supported by some medical evidence.

### A.     Brown's Treating Physicians

After setting forth the relevant facts, Judge Mahoney summarized the ALJ's assessment of Dr. Kilburg's mental and physical RFC opinions as follows:

> The ALJ gave little weight to Dr. Kilburg's opinion at two different steps in the disability analysis.
>
> ***
>
> In rejecting Dr. Kilburg's mental functioning assessment, the ALJ reasoned that "mental functioning . . . falls outside of [Dr. Kilburg's] area of expertise[,] and he did not provide significant mental health treatment to

---

[1] Although Brown nominally attacks the ALJ's treatment of all four opinions, Brown spends the majority of her brief, as well as her objections to the R&R, discussing the treatment of Dr. Kilburg's opinion.  *See* Doc. No. 12 at 5-15, Doc. No. 17 at 1-3.  Nonetheless, I will address all four opinions.

[Brown]." AR 19. Brown argues that this is not a good reason to reject Dr. Kilburg's opinion and that she did receive significant mental health care from Dr. Kilburg. Doc. 12 at 10-11.

"[An] ALJ [i]s not required to give controlling weight to the opinions of treating physicians insofar as those opinions [a]re . . . outside the doctors' area of expertise." *Nicholson v. Berryhill*, 695 F. App'x 998, 999 (8th Cir. 2017) (unpublished per curiam) (citing *Wildman v. Astrue*, 596 F.3d 959, 965-67 (8th Cir. 2010)). Dr. Kilburg is not a licensed mental health professional. His opinion that Brown suffers from depression that causes several mental impairments, including a marked limitation in maintaining attention and concentration (AR 544-43), is thus outside of his expertise. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

Brown provides a lengthy list of citations by which she seeks to establish Dr. Kilburg's significant involvement in her mental health treatment. Doc. 12 at 11. For the most part, these records merely show that Brown's depression was listed as an "active problem" throughout the course of her treatment by Dr. Kilburg. AR 545, 548, 819, 905-06, 912, 918-19, 926, 933, 942, 947, 950, 954-55, 957-58, 960, 964, 971, 974. In only a few places do Dr. Kilburg's treatment notes comment substantively on Brown's mental health, and none support his finding of marked limitation in attention and concentration (indeed, the treatment notes in which Dr. Kilburg evaluated Brown in that category reflect normal findings). Prior to July 2011 (when Brown alleges her disability began), Dr. Kilburg prescribed medication to treat her depression, but she discontinued it. AR 339, 552, 967, *see also* AR 334, 342. In November 2013, Dr. Kilburg evaluated her mental status as good. AR 546. A note from January 27, 2014—the day Brown brought in disability forms to complete—states that Brown "[d]oes have a personality disorder as well as some chronic depression," but notes that "[t]h[e]se have . . . been fairly stable." AR 954. Brown "report[ed] being a little depressed" in February 2014. AR 948. On January 23, 2015, despite Brown making subjective complaints of anxiety and depression, Dr. Kilburg found that her mood and mental health were "better today." AR 894, 896-97. And in March and April of 2015, Dr. Kilburg found Brown to have normal mood, affect, judgment, thought content, behavior, cognition, and memory. AR 1075-76, 1083-84. In July 2015, he noted that she appeared down but also that her speech, cognition, and memory were normal. AR 1066-67. In sum, Dr. Kilburg's treatment records lend credence to the ALJ's finding that Brown did not suffer from significant mental-health limitations and that Dr.

Kilburg did not provide significant mental-health treatment to Brown. The ALJ gave good reason for affording no weight to Dr. Kilburg's opinions of the limitations caused by Brown's mental impairments. *See Craig*, 212 F.3d at 436 (affirming the ALJ's decision to discount primary care physician's opinion that claimant suffered from moderate depression because the physician "[wa]s not a licensed mental health professional," his treatment notes reflected the problem was reasonably controllable, and claimant did not allege depression as a basis for her claim in her initial disability report).

The ALJ also assigned little weight to Dr. Kilburg's opinion that Brown's capacity to stand, walk, and sit are limited to less than two hours in an eight-hour workday; that she must shift between sitting, standing, and lying down as needed; and that she can lift less than ten pounds (Dr. Kilburg chose the most restrictive option in every category on the form he filled out). AR 26, 542. The ALJ noted that Dr. Kilburg found greater restrictions than Brown alleged in the administrative hearing and further concluded that Dr. Kilburg based his opinion on Brown's discredited subjective complaints (AR 26), which is a proper basis for discounting the opinion of a treating physician. *See Vance v. Berryhill*, 860 F.3d 1114, 1120-21 (8th Cir. 2017). Brown essentially admits that there is no objective medical evidence or findings in Dr. Kilburg's treatment notes to support his opinion (Doc. 12 at 12-13) but argues that neither is there any evidence to support that Dr. Kilburg based his opinion on Brown's subjective complaints. Dr. Kilburg completed his RFC opinion during an appointment with Brown present. *See* AR 954-56. As discussed above, Dr. Kilburg opined that Brown suffered from marked limitations in concentrating and paying attention, as she had routinely reported, even though his objective psychological examinations were mostly normal. AR 544, 1066-67, 1075-76, 1083-84. The ALJ could have reasonably found from this evidence that Dr. Kilburg relied on Brown's subjective complaints when evaluating her physical RFC, as he did when evaluating her mental RFC.

Moreover, as the ALJ noted, the objective medical evidence does not support Dr. Kilburg's findings, which further suggests he relied on Brown's subjective complaints. AR 23-26. Dr. Kilburg's physical RFC assessment recognized that Brown suffers from diabetes and related neuropathy, and he perhaps limited his found limitations in part to those impairments. AR 542. The ALJ concluded, however, that clinical evidence from Dr. Kilburg and other physicians demonstrated Brown "did not experience substantial complications from her diabetes," aside from

"very mild" neuropathy. AR 23. In August 2012, neurological testing performed by a consulting physician produced normal results. AR 437. After more neurological testing in September 2014, a specialist described Brown's neuropathy as "very mild" and noted that Brown displayed "no obvious atrophy of the lower extremities." AR 1003-05. In November 2014, Dr. Kilburg noted that Brown's gait and station were normal. AR 901. Later, in a March 2015 examination, he found Brown to exhibit normal strength and no sensory defects. AR 1076. During a July 2015 exam, Dr. Kilburg found that Brown's blood sugar levels were "adequately controlled" and that she was not suffering from any diabetes complications, expressly noting that Brown was not suffering from diabetic neuropathy. AR 1060-61.

Dr. Kilburg also attributed Brown's limitations to chronic pain. AR 542. The ALJ recognized that Brown has primarily complained of pain in her knees and back. AR 24-25. But x-rays of Brown's left knee have shown minimal degenerative changes that "would not indicate a reason for . . . significant pain," and x-rays of her right knee have shown mild to moderate changes. AR 24, 850-53, 921, 923, 930-31, 941. Although Dr. Kilburg saw Brown for knee pain in July and November 2014, he observed normal gait and station. AR 898, 901, 911, 914. With regard to Brown's back, x-rays and MRIs from 2014 have shown only mild degenerative changes of the spine. AR 24, 868-71, 873-74, 908-09. And as the ALJ noted, Brown has not displayed clinical signs associated with disabling back pain: physical exams by Dr. Kilburg have revealed normal strength, no swelling or tenderness, and (as already mentioned) normal gait and station. AR 901, 907, 914, 1059, 1066-67, 1076, 1084. An August 2014 physical examination by a neurosurgical consultant (at Dr. Kilburg's request) revealed negative straight leg testing, and the doctor also opined that Brown did not appear "particularly in pain." AR 987. Substantial evidence supports the ALJ's determination that Dr. Kilburg relied on Brown's subjective complaints in determining her physical RFC.

The ALJ also noted that Brown's own statements contradicted Dr. Kilburg's assessment (AR 26), which constitutes another valid reason to give less weight to a treating physician's opinion. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (finding claimant's admitted daily activities belied the physical limitations assigned by a treating doctor's physician). Brown testified that "if I can try to keep my mind on the task [of standing], which is hard, I can probably get out two hours, but them two hours like would be normal for you guys, it would feel like 14 hours

7

that I worked." AR 1156-57. Although this statement is not necessarily inconsistent with Dr. Kilburg's finding that Brown could not stand two hours in an eight-hour workday (as found by the ALJ), other statements more clearly contradict the limitations imposed by Dr. Kilburg. For instance, in disability questionnaires, Brown reported being able to shop in stores for up to four hours at a time (AR 204), to cook for up to six hours (AR 225), and to spend six to eight hours doing housework once a month (AR 225), suggesting that she is able to stand or walk for at least two hours in a day (contrary to Dr. Kilburg's opinion). She also reported a daily routine that involved sitting on the couch all morning, getting up only to fix breakfast and clean her dishes, and watching television daily for two hours, which is inconsistent with Dr. Kilburg's opinion that she could not sit for two hours at a time. AR 200, 227. Also, Dr. Kilburg opined that Brown could not lift ten pounds, but she reported in a January 2013 pain questionnaire that she could lift ten pounds. AR 200, 542. Especially in light of the standard of review, substantial evidence supports that Dr. Kilburg's RFC opinion is inconsistent with Brown's own description of her limitations.

Doc. No. 16 at 7-11. Thus, Judge Mahoney concluded that the ALJ gave sufficient "good reasons" to discount Dr. Kilburg's mental and physical RFC opinions.

Turning to Dr. Mathew's medical opinion, Judge Mahoney summarized the ALJ's analysis as follows:

The ALJ gave no weight to Dr. Mathew's opinion, reasoning that Dr. Mathew had first seen Brown just one month prior to the completion of the opinion and that no objective clinical findings supported his opinion. AR 26, 817. Dr. Mathew filled out the same one-page form as Dr. Kilburg to assess Brown's RFC and found nearly all of the same limitations. AR 817. He noted that as of the date he completed the form (March 28, 2015), he had been treating Brown for only one month. AR 817. Dr. Kilburg referred Brown to Dr. Mathew in late 2014. AR 891. The record contains only one treatment note from Dr. Mathew, dated May 14, 2015. AR 1131. That treatment note (for a follow-up appointment) reflects Dr. Mathew found Brown's sitting and standing balance to be good and noted 14/18 tender myofascial tender points. *Id.* The treatment note also shows that Brown requested pain medication, but Dr. Mathew suggested aquatherapy instead, which Brown declined, stating "she does not have time for th[at] right now." *Id.*

The ALJ properly gave no weight to Dr. Mathew's opinion. The ALJ could also consider the "[l]ength of the treatment relationship and the frequency of examinations" when determining the weight to assign Dr. Mathew's opinion as merely an examining source. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). To be a treating source whose opinion is entitled to controlling weight, a doctor must "ha[v]e, or had ha[ve], an ongoing treatment relationship" with the claimant, which generally requires that the claimant "see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the] medical condition[]." 20 C.F.R. §§ 404.1257(a)(2), 416.927(a)(2). Although a treating source may have "treated . . . [the claimant] only a few times," *id.*, a physician who has examined a claimant only once cannot qualify as a treating source entitled to controlling weight, *see Kennell v. Colvin*, No. 15-cv-03190-NKL, 2016 WL 223718, at *6 (W.D. Mo. Jan. 19, 2016); *Sorensen v. Colvin*, No. CIV 14-4065, 2015 WL 5029169, at *17-18 (D.S.D. Aug. 25, 2015) (collecting cases). The ALJ properly determined that Dr. Mathew did not have an ongoing treatment relationship with Brown at the time he made his opinion and his opinion was therefore not entitled to controlling weight. Furthermore, as the ALJ noted, the basis for Dr. Mathew's form opinion is unclear, and it is inconsistent with objective testing (discussed above with regard to Dr. Kilburg's opinion).

Doc. No. 16 at 11-12. Judge Mahoney concluded that "[s]ubstantial evidence supports the ALJ's decision to afford Dr. Mathew's RFC opinion no weight." *Id.* at 12.

Next, Judge Mahoney determined that the ALJ properly declined to apply treating source analysis to Dr. Hansen's opinion:

Dr. Hansen had only seen Brown once at the time he formed his opinion (and the record reflects Brown only had two appointments with Dr. Hansen total (AR 1040-47, 1049-53)). *See Sorensen*, 2015 WL 5029169, at *17-18. The ALJ could properly assign little weight to the opinion because Dr. Hansen offered "few supportive clinical observations in his records" (AR 19) and because his assessments were based, at least in part, on Brown's subjective reports. *See Vance*, 860 F.3d at 1121.

Doc. No. 16 at 13.

Finally, Judge Mahoney addressed the ALJ's treatment of Dr. Stientjes' opinion:

The opinion of Dr. Stientjes, the consulting psychological examiner, was also based on a one-time examination. One-time consultative examiners are not treating sources. *Cowles v. Colvin*, 102 F. Supp. 3d 1042, 1055 (N.D. Iowa 2015). The ALJ assigned Dr. Stientjes' opinion little weight because she found its conclusions inconsistent with "the minimal evidence of impairment elsewhere in the record." AR 18-19. For example, Dr. Stientjes opined that Brown suffered from severe depression (AR 541), but other providers observed only mild to moderate signs of depression. *See* AR 987 ((neurological consultant noted Brown "appears somewhat depressed"), 1042 (Dr. Hansen's April 2015 treatment note reflects a mild to moderately depressed mood), 1076, 1084 (Dr. Kilburg's March and April 2015 treatment notes reflect normal mood and affect), 1095 (emergency room physician observed normal mood and affect in April 2015). Brown reported severe sadness to Dr. Stientjes, but her testimony suggests she did not really consider herself to be depressed. AR 540, 1160. Moreover, during the more than three years that elapsed between Dr. Stientjes' opinion and Brown's hearing, the record reflects that Brown rarely sought mental-health treatment, and treatment notes from Brown's visit to her primary-care physician make no mention of severe depression. *See* AR 905, 911, 918, 926, 933, 942, 947, 950, 957, 961, 962; *but see* AR 824-25 (suggesting that Brown's depression was discussed during an appointment on March 27, 2015, although no new medications were prescribed). Substantial evidence supports the ALJ's determination that Dr. Stientjes' RFC opinion was inconsistent with the overall record, and the ALJ could assign little weight to his opinion for that reason. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.").

Doc. No. 16 at 13-14. Thus, Judge Mahoney concluded, the ALJ properly evaluated the RFC opinions of each expert.

## B.    *The Credibility Determination*

Next, Judge Mahoney considered the ALJ's credibility determination:

Brown argues that the ALJ failed to articulate any reasons for doubting Brown's subjective complaints. Doc. 12 at 15. Contrary to Brown's assertions, the ALJ found "the totality of the evidence undermines the credibility of [Brown's] subjective reports" (AR 25) and discussed how

the medical record does not support "the degree of subjective pain she has reported" (AR 23-26), specifically noting that Brown's reports to healthcare providers were inconsistent with the limitations she endorsed at the hearing and that the course of treatment pursued by Brown's physicians did not indicate the disabling pain Brown alleged (AR 25). The ALJ also considered Brown's daily activities. AR 22. The ALJ may discredit a claimant's subjective complaints based on inconsistencies with the record as a whole and the claimant's ability to perform activities of daily living. *See* [*Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993)] (stating that "inconsistencies in the record as a whole" are a proper ground for discrediting a claimant's subjective reports); *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (considering claimant's daily activities in determining the credibility of his subjective reports). During a visit in July 2014, Brown told her primary care physician that she was able to walk seven blocks and back, although she stated at her hearing that she could only walk one block and back daily, even with the use of an assistive device. AR 911, 1155. At the hearing, she testified that Dr. Kilburg prescribed the use of a walker. AR 1155. But in a January 2013 function report, she stated a physical therapist prescribed the walker and Dr. Kilburg prescribed a cane (a minor inconsistency with her testimony), and in July 2013, she suggested that neither the cane nor the walker was prescribed, stating that the walker had belonged to her mother and that the cane had been purchased from a pharmacy without a prescription. AR 207, 229; *see also* AR 26 (ALJ noted there is no treatment "record of a treating doctor prescribing an assistive device"). These inconsistencies weigh against the credibility of Brown's subjective complaints. In addition, as outlined above in the discussion of the medical-opinion evidence, Brown's activities of daily living and the objective medical evidence are not consistent with limitations as severe as described.

The ALJ also observed that the course of treatment pursued by Brown's physicians is inconsistent with her claims of severe pain. An ALJ may properly consider a claimant's medication in evaluating the credibility of severe pain. [*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)] (noting the "dosage, effectiveness, and side effects of medication" as one of the [*Polaski v. Heckler*, 739 F.2d 1320, 1321 (8th Cir. 1984)] considerations). In this case, the ALJ noted that Brown was "not prescribed strong narcotic medications," which is inconsistent with her complaints of disabling pain. AR 25. Indeed, at the time of her hearing, Brown was taking no prescription pain medication at all. AR 1162. "[A]n ALJ may reasonably discredit a claimant's testimony about disabling pain when the claimant

takes nothing stronger than over-the-counter medications to alleviate her symptoms." *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) (citing *Goodale v. Halter*, 257 F.3d 771, 774 (8th Cir. 2001).

Doc. No. 16 at 15-16. After examining the basis for the ALJ's decision, Judge Mahoney addressed the *Polaski* factors and considered whether the ALJ fully considered Brown's subjective complaints. *Id.* at 16. Judge Mahoney found that the ALJ gave good reasons for discounting Brown's subjective complaints. As a result, Judge Mahoney found substantial evidence in the record as a whole to support the ALJ's findings. *Id.* at 18.

## C.     *Some Medical Evidence Supporting the RFC*

Finally, Judge Mahoney turned to Brown's argument that there was no medical evidence to support the ALJ's RFC:

> Brown argues that because the ALJ gave little or no weight to the RFC opinions of her treating and examining physicians, no medical evidence supports the RFC determination. Brown relies on *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000); *Lund v. Weinberger*, 520 F.2d 782 (8th Cir. 1975); and [*Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001)]. These cases are distinguishable. In *Nevland*, the record contained no RFC assessment from either a treating or examining source. 204 F.3d at 858. By contrast, the record here contains RFC opinions from a treating source and three examining sources (which the ALJ considered although she gave them little and no weight), in addition to multiple state agency consultants. AR 35-37, 48-52, 63-67, 539-44, 817, 1049-51. In *Lund*, the only medical opinion "in the record of [the claimant's] ability to do work [wa]s favorable to [the claimant]." 520 F.2d at 785. Here, the RFC assessments provided by the state agency consultants contain similar limitations as the ALJ's RFC determination (except Drs. Weis, Gernes, and Staudacher all found Brown more limited in her ability to sit, stand, and walk, which is discussed further below). AR 35-37, 48-52, 63-67. Finally, in *Lauer*, the RFC assessment of a single, non-examining consultant was deemed insufficient medical evidence because the consultant "provided no specific medical findings to support his . . . RFC assessment" and because the consultant and the ALJ disagreed about which impairments gave rise to the claimant's limitations. 245 F.3d at 705. In this case, the ALJ relied heavily on the RFC assessments of five non-examining consultants, each of whom included a

detailed statement of the medical findings supporting their opinions. AR 35-37, 45-52, 63-67. Moreover, the severe impairments found by the ALJ reflect substantially the same severe impairments identified by the state agency consultants. AR 16, 34, 46, 61.

Doc. No. 16 at 17. Judge Mahoney also considered that the ALJ conducted a detailed, independent review of Brown's medical records, "satisf[ying] the requirement that the ALJ's RFC determination be supported by some medical evidence." *Id.* at 17-18. However, Judge Mahoney made an alternative finding with regard to two particular findings of the ALJ as they relate to Brown's ability to sit or stand:

> Although I reject Brown's wholesale contention that the ALJ's RFC determination rests on no medical evidence, the ALJ's particular findings as to Brown's ability to stand and to sit for extended periods of time are not supported by any medical source evaluation. The ALJ determined that Brown could "stand/walk up to six hours in an eight-hour workday and sit without limitation." AR 21. All three state agency physicians who evaluated Brown's physical RFC opined that Brown can stand or walk for two hours per workday and that she can sit for six hours per workday (and Drs. Kilburg and Mathew found Brown even more limited). AR 35, 48, 63, 542, 817. The ALJ's decision cites one medical record from May 2015 in which Brown's sitting balance is described as "good," but evidence of good balance does not establish that Brown can sit for eight hours (as opposed to six). AR 25, 1131. The ALJ's finding as to Brown's ability to sit, stand, and walk is not supported by "some medical evidence." *See Peterson v. Colvin*, No. C14-4110-LTS, 2016 WL 1611480, at *11 (N.D. Iowa Apr. 21, 2016) (holding that no medical evidence supported the ALJ's RFC finding that the claimant could sit or stand for thirty minutes at a time when "no medical source or other source provided an opinion that [claimant] can sit or stand for more than 15 minutes at once").

> Nevertheless, this error is harmless, as the ALJ would have made the same step-five determination even if she had fully adopted the limitations imposed by the state agency consultants. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (declining to reverse and ALJ's decision when "[e]ven if the ALJ had not erred, there [was] no indication that the ALJ would have decided differently"); *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008). The work the ALJ found that Brown could perform does not require "unlimited sitting' or six hours of standing; it involves sedentary work. *See* Dictionary of Occupation Titles §§ 219.587-010,

237.367-046, 249.587-018 (4th ed. 1991). Sedentary work "involves sitting," as well as "occasional[]" walking and standing. 20 C.F.R. §§ 404.1567(a), 416.967(a). In Social Security Ruling (SSR) 96-9p, the Social Security Administration clarified that the "occasional" walking and standing required for sedentary work "would generally total no more than about 2 hours of an 8-hour workday" and that the amount of sitting required "would generally total about 6 hours of an 8-hour workday." SSR 96-9p, 61 Fed. Reg. 34478, 34480 (July 2, 1996). The state agency consultants found Brown capable of performing sedentary work. Even if the ALJ had adopted the limitations found by the state agency consultants (to whom the ALJ gave great weight), the ALJ would have still found Brown capable of working as a ticket checker, telephone quote clerk, or document preparer.

Doc. No. 16 at 18-19.

For all of these reasons, Judge Mahoney recommends that I affirm the ALJ in all respects and enter judgment in favor of the Commissioner.

## IV. DISCUSSION

Brown objects to Judge Mahoney's findings that (1) the ALJ properly weighed the medical opinions of her treating physicians, (2) the ALJ properly discounted Brown's testimony and (3) there is some medical evidence in support of the RFC. I will review those issues de novo.

### A. Medical Opinions

Brown argues that Judge Mahoney erred in concluding the ALJ had good reasons to discount the opinions of Drs. Kilburg, Mathew, Hansen and Stientjes. An opinion by a treating physician must be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ must give "good reasons . . . for the weight [the ALJ gives a] treating source's medical opinion." 20 C.F.R. §

404.1527(c)(2); *see also Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). By contrast, a consulting expert's opinion is generally entitled to less weight. Normally, the opinion of a one-time consulting examiner will not constitute substantial evidence, particularly where the opinion is inconsistent with the record as a whole. *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir.2000); *see also Cowles*, 102 F. Supp. 3d at 1055.

It is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley v. Shalala*, 52 F.3d 784, 785–87 (8th Cir. 1995)). However, any physician's conclusion regarding a claimant's RFC addresses an issue that is reserved for the ALJ. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

The ALJ's RFC finding must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of limitations," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 931-31 (8th Cir. 2016). If the ALJ's RFC is within the "zone of choice" permitted by the evidence, the court must affirm. *Culbertson*, 30 F.3d at 939. Based on my de novo review, I find no error in the ALJ's treatment of the treating and examining physician's opinions.

### 1. *Dr. Kilburg*

Regarding Dr. Kilburg, Brown contends Judge Mahoney erred by (1) "accept[ing] the ALJ's incorrect laymen's belief that a 'family health care' physician is not qualified to diagnose and treat mental health impairments and symptoms" (Doc. No. 17 at 1), (2) requiring objective evidence in support of Dr. Kilburg's opinion, and (3) faulting Dr. Kilburg for relying on Brown's subjective complaints. Regarding the mental RFC,

Brown is correct that in some cases, a family doctor or primary care physician, such as Dr. Kilburg, may be qualified to give mental health treatment to their patients alongside other types of treatment. Brown is also correct that in many cases, other mental health practitioners (such as counselors, nurse practitioners or licensed social workers) may not qualify as acceptable medical sources under the regulations applicable to Brown's petition.[2] *See, e.g.,* 20 C.F.R. 404.1527(f).

Nonetheless, in this particular case the ALJ had more than enough good reasons to discount Dr. Kilburg's expertise. In support of her argument that Dr. Kilburg is qualified to give an opinion as to her mental RFC, Brown cites to an article stating that "[t]he role of primary care clinicians in treating patients with mental health disorders has evolved such that primary care is a major source of mental health treatment." Doc. No. 17 at 1 fn.2. However, Brown has provided no evidence to suggest that Dr. Kilburg, in particular, is qualified. Brown has provided a link to Dr. Kilburg's profile on UnityPoint Clinic's website which states that Dr. Kilburg is Board Certified by the American Board of Family Medicine. *See* Doc. No. 17 at 1 fn.1. Dr. Kilburg has no other certifications, and nothing on the website suggests that he has any specialized training in psychiatric medicine. In fact, his interests are shown to include pediatrics, sports medicine and vasectomy. *Id.*

Substantial evidence supported the ALJ's finding that mental health is outside of Dr. Kilburg's field of expertise. *See Craig*, 212 F.3d at 436 (when treating physician was not a licensed mental health professional, ALJ could reasonably conclude that mental RFC opinion was outside physician's field of expertise). The fact that an RFC opinion pertains to areas beyond a treating physician's expertise is a "good reason" to discount the opinion. *See Wildman*, 596 F.3d at 967 (ALJ did not err in disregarding opinions beyond treating physician's expertise).

---

[2] For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c applies instead.

Substantial evidence also supports the ALJ's conclusion that Dr. Kilburg did not provide substantial mental health treatment that would support his RFC opinion. Prior to July 2011, Brown was diagnosed with depression and prescribed medication. AR 339, 552, 967. However, she discontinued her medication shortly thereafter. AR 334, 342. The vast majority of the medical records involving Dr. Kilburg refer to depression only as an "active problem," without discussion of the severity of symptoms or course of treatment (if any). *See* AR 545, 548, 819, 905-06, 912, 918-19, 926, 933, 942, 947, 950, 954-55, 958-59, 960, 964, 971, 974. In the few instances in which Dr. Kilburg addressed depression, the outlook was not as severe as indicated in his RFC opinion. In November 2013, Dr. Kilburg described Brown's mental status as good (AR 546); in January 2014, he noted Brown's personality disorder and chronic depression, describing these disorders as "fairly stable" (AR 954); in February 2014, Brown "report[ed] being a little depressed" but no course of treatment was added (AR 948). In March, April and July 2015, Dr. Kilburg evaluated Brown's mood, affect, judgment, thought content, behavior, cognition, and memory and found them all to be normal. AR 1066-67, 1075-76, 1083-84.

In spite of occasionally "appearing down" (AR 1066-67), Dr. Kilburg never suggested that Brown resume medication or pursue any other mental health treatment. In contrast, Dr. Kilburg's mental RFC opinion stated that "[Brown] will not be able to work secondary to diminished memory [and] attention span," and that Brown would be impaired by a "marked" inability "to maintain attention and concentration for extended periods." AR 543-44. This unexplained inconsistency between the treatment records and the RFC opinion is another good reason to give little weight to Dr. Kilburg's mental RFC. *See Craig*, 212 F.3d at 436 (affirming ALJ's decision to discount primary care physician's mental RFC opinion where his treatment notes reflected the problem was reasonably controllable).

Turning to whether Judge Mahoney improperly considered the lack of objective evidence in support of Dr. Kilburg's physical RFC opinion, Brown is again correct that objective evidence is not strictly required, particularly for impairments that are not typically accompanied by obvious objective measures. *See, e.g., Goff*, 421 F.3d at 793 ("It is well-settled that an ALJ may not discount a claimant's allegations of disabling pain *solely* because the objective medical evidence does not fully support them. However, the ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole." (citations omitted; emphasis added)). However, "supportability" is one factor that the ALJ must consider in deciding how much weight to give an opinion. *See, e.g., Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008); *see also* 20 C.F.R. §§ 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); 404.1527(d); 416.927(c)-(d). Further, a lack of objective evidence can support an ALJ's finding of an inconsistency in the record, which is a good reason to discount the opinion of a treating physician. *See Goff*, 421 F.3d at 793 ("Considering the ALJ's findings regarding other objective medical evidence, [claimant's] activity level, and [claimant's] work record, it is apparent the ALJ sufficiently considered her complaints of disabling pain but expressly discredited them for good cause because they were inconsistent with the record as a whole.").

As the records relate to Dr. Kilburg's physical RFC opinion, there is substantial evidence to support the ALJ's finding that the objective evidence was inconsistent with Brown's reported activities and subjective complaints in several respects. The ALJ found that although Brown "persistently complained of chronic pain . . . her clinical examinations have not shown substantial abnormalities that would account for the degree of subjective pain she has reported." AR 23. Specifically, Brown's alleged syncope episodes were inconsistent with "neurological examinations . . . largely within normal

limits," as Brown's EEG studies were "essentially normal." *Id.* The ALJ noted that in November 2014, Brown's "gait and station were normal, despite reporting subjective decrease in sensation," and that "[s]he ha[d] consistently shown normal strength and motor functioning." *Id.* Finally, regarding degenerative disc disease, the ALJ commented that the findings of mild degenerative changes in the cervical and lumbar spine were inconsistent with Brown's complaints of overall pain and consistent with her normal gait and station, strength, and reflexes. *Id.* at 24.

These inconsistencies constitute a good reason to discount Dr. Kilburg's physical RFC opinion. Considering objective evidence for the purpose of evaluating the consistency of the record as a whole does not equate to requiring objective evidence of disability. Neither the ALJ nor Judge Mahoney erred by addressing the objective evidence in this manner.

Finally, regarding Dr. Kilburg's reliance on Brown's subjective statements, Brown suggests that Judge Mahoney's conclusion on this point is inconsistent:

> [T]he Magistrate cited [*Vance*, 860 F.3d at 1120,] for the proposition that if an ALJ does not believe the claimant, then the doctor should not have believed the Claimant and the doctor's opinion is not worthy of controlling weight. Two shortcomings about the use of that proposition here, one of which is that the ALJ must still give some weight to that treating physician['s] opinion and explain what weight and why, and the other is that the ALJ must explain good reasons for not believing the Claimant in the first place. This ALJ did neither. Then, after denigrating an honest physician, implying that he was lying and simply repeating what his patient said, the Magistrate turned around 180 degrees to state that the physician should not be given weight because his opinions do not agree with [the] statements of his patient.

Doc. No. 17 at 3. Brown's argument does not accurately characterize either the ALJ's opinion or Judge Mahoney's R&R. An ALJ is entitled to discount a treating doctor's opinion if it is based on the claimant's subjective complaints and the ALJ has found the claimant to be not credible. *Vance*, 860 F.3d at 1120-21 ("Because the ALJ found that [claimant] was not credible, it followed that Dr. Jung's opinion lacked force when it

19

relied on [claimant's] complaints."); *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (same; citing *Wildman*, 596 F.3d at 967; *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007)). By recognizing that Dr. Kilburg seemed to be relying on Brown's subjective complaints and that some of Dr. Kilburg's RFC limitations were inconsistent with Brown's testimony, Judge Mahoney neither "denigrat[ed] an honest physician" nor "turned around 180 degrees." The positions are not mutually exclusive: Dr. Kilburg could have honestly reported his opinion of Brown's RFC by relying on her subjective statements, and Brown could have reported different limitations to Dr. Kilburg than she did during the hearing. Regardless, each of the above-discussed reasons is a good reason to give Dr. Kilburg's RFC opinion less weight. *See Vance*, 860 F.3d at 1120. The ALJ's decision to reject portions of Dr. Kilburg's RFC opinion is supported by substantial evidence. Brown's objection will be overruled.

### 2. *Drs. Mathew, Hansen and Stientjes*

Regarding the treatment of her consultative examiners, Brown objects that giving these doctors' opinions no weight or little weight "primarily because they do not have the longitudinal relationship . . . a treating doctor would have . . . seems weak on its face." Doc. No. 17 at 4. Further, Brown contends the fact that the consultative examiner's opinions are consistent with each other and with Dr. Kilburg's opinions means that the opinions are not actually inconsistent with the record as a whole.

Brown's first argument has no merit.[3] The length of a consultative examiner's treatment of a claimant is clearly a good reason to give less weight to his or her RFC opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i); *see also Cantrell*, 231 F.3d at 1107 ("As a general matter, 'the report of a consulting physician who examined [a] claimant once does not constitute 'substantial evidence' upon the record as a whole,'"

---

[3] Indeed, Brown cites no authorities in support of this argument.

(citing *Lanning v. Heckler*, 777 F.2d 1316, 1318 (8th Cir. 1985) (internal citations omitted; modification supplied))). Here, Dr. Mathews saw Brown twice (AR 1131), Dr. Hansen saw Brown once prior to authoring his opinion and once after (AR 1040-47, 1049-53), and Dr. Stientjes saw Brown once in total (AR 541). The treatment notes for each of these appointments are sparse and are devoid of objective findings to support the conclusions made. Thus, the length of treatment is a good reason in this case to discount these doctors' opinions.

Further, the fact that these three opinions are consistent with each other and with Dr. Kilburg's opinion does not establish that the opinions are consistent with the record as a whole. The "record as a whole" refers to the entire record—the treatment notes, the claimant's applications for social security and testimony before the ALJ, and the state consultative examiner's opinions. The fact that four opinions—filled out on identical forms supplied by a claimant's attorney—are consistent with each other does not rule out the various inconsistencies addressed by Judge Mahoney and by the ALJ. *See* Doc. No. 16 at 7-14 (laying out the inconsistencies identified by the ALJ). Brown's objection is overruled.

## B.    *Brown's Credibility*

Brown argues that Judge Mahoney erred in finding that substantial evidence supports the ALJ's credibility decision, pointing (without citation) to evidence in the record consistent with Brown's sworn statements. *See* Doc. No. 17 at 4-5 ("Apparently 'totality' means everything except [Brown's] sworn statements, Dr[.] Kilburg's expert opinion, Dr[.] Stientje's expert opinion, Dr. Matthew's [sic] expert opinion, and Dr. Hansen's expert opinion."). This flippant argument misses the mark. Although there may be some evidence in the record consistent with Brown's subjective complaints, a court is required to review the record under the "substantial evidence" standard, and may not reverse the ALJ's opinion merely because substantial evidence may also support

another conclusion. *Baker*, 730 F.2d at 1150; *see also Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination."). The issue is whether substantial evidence supports the ALJ's determination, not whether substantial evidence could support an alternative finding. I agree with Judge Mahoney that there was substantial evidence in the record to support the ALJ's credibility determination. The ALJ fully recognized "that some people may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than others who have the same medical signs and laboratory findings." AR 25. However, after considering the credibility factors set forth in SSR 96-7p, as well as in 20 C.F.R. §§ 404.1529(c) and 416.929(c), the ALJ determined that the inconsistencies between Brown's reported abilities and those in her treating doctor's RFC, as well as the inconsistencies between the conservative course of treatment and Brown's reported pain, undermined Brown's credibility. The ALJ was permitted to infer that Brown's subjective reports are not credible from these factors. *See Polaski*, 739 F.2d at 1321-22. Brown's objection is overruled.

**C.      *Some Medical Evidence Supporting the RFC***

Finally, Brown objects to Judge Mahoney's finding that there is some medical evidence to support the RFC. Brown first argues that the fact the ALJ frequently cited certain portions of the medical record, along with "old stale state agency opinions," does not satisfy the "some medical evidence" standard because there is no objective medical evidence and (according to the ALJ) no credible expert medical opinion evidence. *See* Doc. No. 17 at 5. Additionally, Brown objects that the portion of the RFC that Judge Mahoney found to be unsupported does not constitute "harmless error" because Judge Mahoney "speculated" and because "there is nothing to guarantee what the ALJ would do if she had not made the mistake." *Id.*

The ALJ found that Brown had the RFC to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a). Specifically:

> [Brown] has the [RFC] to lift/carry up to 10 pounds; stand/walk up to six hours in an eight-hour workday and sit without limitation; she should be able to ambulate to and from the workstation with an assistive device; she can never climb ladders, ropes, or scaffolds or crawl; she can occasionally climb ramps or stairs, balance, stoop, kneel, or crouch; she must avoid concentrated exposure to extreme cold . . . , heat . . . , and humidity . . . and must avoid concentrated exposure to unprotected heights and hazardous machinery; she is limited to tasks learned within 30 days that are routine and repetitive in nature.

AR at 20-21. In reaching this conclusion, the ALJ considered all of the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, as well as all medical opinions according to 20 C.F.R. § 404.1527 and § 416.927. *Id.* The ALJ weighed the nature and length of each treating relationship, their areas of specialty, and the findings supporting their opinions. *Id.*

Ultimately, a claimant's RFC is an issue reserved for the ALJ. *Wagner*, 499 F.3d at 849 *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ's RFC determination must be supported by substantial evidence, which includes medical evidence, meaning the ALJ may not ordinarily make an RFC determination without the benefit of opinion evidence from a treating source. *Nevland*, 204 F.3d at 857; *Fitzgerald Morris v. Colvin*, No. C14-4068-LTS, 2016 WL 3360506 at *8-9 (N.D. Iowa June 16, 2016). However, as this court has explained, "ordinarily" does not mean "never." "[I]f other medical evidence in the record clearly establishes a claimant's RFC to do other work, and to function in the workplace, the absence of an opinion from examining physicians may not require remand." *Kruger v. Colvin*, No. C13–3036–MWB, 2014 WL 1584411, at *10 (N.D. Iowa Apr. 21, 2014) (citing *Nevland*, 204 F.3d at 858; *Hattig v. Colvin*, No. C12–4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013)). The question is whether the lack of opinion evidence from a treating or examining source is overcome

by other medical evidence that clearly establishes the claimant's RFC. *Fitzgerald Morris*, 2016 WL 3360506 at *10.

I find that the ALJ's RFC determination is consistent with, and accounts for, work limitations supported by substantial evidence. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding the ALJ's residual functional capacity assessment was supported by substantial evidence, noting that it was consistent with the limitations identified by the reviewing consultant). Further, regardless of Dr. Kilburg's RFC opinion, this is not a *Nevland* case in which the ALJ inferred her own medical opinions without the benefit of an appropriate medical source. Instead, the ALJ had the benefit of opinion evidence from a treating source and relied at least in part on Dr. Kilburg's objective findings, as well as the objective findings of other physicians. Finally, I find that the lack of a substantially-weighted medical opinion regarding Brown's RFC is overcome in this case by other objective medical evidence that clearly establishes Brown's mental and physical RFC. *Fitzgerald Morris*, 2016 WL 3360506 at *10.

The ALJ's reliance on the state agency consultants' opinions provided substantial evidence for the ALJ's RFC assessment. *See Buford*, 824 F.3d at 797 (finding that the ALJ did not have to obtain "an opinion from a treating or consultative doctor as to [claimant's] work related limitations" because "medical assessments of state agency medical consultants as to [claimant's] limitations are of record and were expressly considered by the ALJ."). An ALJ's RFC findings do not need to "be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932. Here, the ALJ relied on the reports of Drs. Wigton and Shafer as to Brown's mental impairments and relied on evaluations performed by Drs. Weis, Gernes and Staudacher regarding the effects of Brown's various physical impairments. AR at 28, 35-37, 48-52, 63-68. The ALJ and the state agency consultants relied on treatment records from Brown's physicians, as the ALJ would not have found limitations in lifting, standing and walking without those opinions. However, as stated above, the ALJ properly discounted portions of the medical evidence that went

to the *extent* of Brown's physical limitations because they were based on Brown's unsupported subjective complaints.

Regarding the ALJ's finding that Brown was capable of standing for 6 hours in an 8-hour day and was unlimited in her ability to sit, I agree with Judge Mahoney that this conclusion is not supported by substantial evidence. *See* AR 21 (the ALJ's RFC determination); 35 (Dr. Weis finding that Brown can stand and walk for approximately 2 hours per day); 48 (Dr. Wigton, same). However, Judge Mahoney correctly found that this was harmless error. The ALJ presented an RFC to the vocational expert confining Brown to sedentary work and the vocational expert testified that a person with Brown's RFC would be capable of performing various sedentary jobs. *See* AR at 1170-71 ("This individual could stand and walk two total hours in an eight-hour workday. There would be no limitations on the individual's ability to sit."). Although sedentary work typically involves sitting for 6 hours as opposed to 8, the jobs that the vocational expert described include sitting for 6 hours as a limitation. Thus, the vocational expert's testimony would not have changed had the ALJ included this limitation. *See* Doc. No. 16 at 18-19 (discussing sedentary work and the applicable DOT definitions). A court need not reverse an ALJ's harmless error. *See Byes*, 687 F.3d at 917, *Van Vickle*, 539 F.3d at 830.

Based on my de novo review, and except as discussed in the preceding paragraph, I find that the ALJ's RFC is largely supported by substantial evidence. I further find that the limited portion of the RFC not supported by substantial evidence constitutes harmless error. Brown's objection is overruled.


## V.    CONCLUSION

For the reasons set forth herein:

1.    Plaintiff Sandra Brown's objections (Doc. No. 17) to the Report and Recommendation (Doc. No. 16) are **overruled**.

2.    I **accept** United States Magistrate Judge Kelly K.E. Mahoney's Report and Recommendation without modification.  *See* 28 U.S.C. § 636(b)(1).

3.    Pursuant to Judge Mahoney's recommendation:

a.    The Commissioner's determination that Brown was not disabled is **affirmed**; and

b.    Judgment shall enter against Brown and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 21st day of February, 2018.

_____
Leonard T. Strand, Chief Judge